**BEFORE THE UNITED STATES JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| **IN RE BABY FOOD MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION (NO. II)** | **MDL No. 3101** |

**RESPONSE OF DEFENDANT NURTURE, LLC IN OPPOSITION TO MOTION FOR TRANSFER OF ACTIONS PURSUANT TO 28 U.S.C. § 1407**

I.      INTRODUCTION

Defendant Nurture, LLC (formerly Nurture, Inc.) joins the concurrently filed Response to Motion to Transfer opposing centralization filed by Defendants Beech-Nut Nutrition Company, Hain Celestial Group, Inc., Gerber Products Company, Plum PBC, Sprout Foods, Inc. and Walmart, Inc. ("Manufacturer Defendants"). Nurture LLC requests that, if a multidistrict litigation ("MDL") is formed, the Panel include *Watkins v. Nurture, Inc.*, Case No. 2:22-cv-00551 (E.D. La.), in the coordinated proceeding and that the cases be transferred to the Southern District of New York.

As a threshold matter, Movants[1] have not shown that centralization of the constituent actions is necessary or appropriate. The Manufacturer Defendants' Response sets out multiple grounds on which the Panel should deny the Motion, and Nurture adopts in full the arguments and authorities contained therein. As explained in that response, centralization should be denied because the Motion includes a small number of cases involving the same group of plaintiff lawyers, the parties can readily coordinate across actions, the remaining discovery is largely plaintiff-specific, and Movants have not satisfied the well-established test for centralization.

In the event the Panel orders centralization, however, *Watkins* should be treated no differently than the other constituent actions. Any questions of fact common to the constituent actions are also common to *Watkins*, and to the extent any efficiencies are created by an MDL, *Watkins* should benefit from those efficiencies, however limited.

---

[1] Plaintiff in the *Watkins* case will be referred to as "Plaintiff" in this brief; for added clarity, plaintiffs who filed this Motion to Transfer will be referred to as "Movants."

1

Notably, Plaintiff in the *Watkins* case did not file an interested party response opposing the MDL or the inclusion of *Watkins* in an MDL.[2] Movants and plaintiffs in three constituent actions—none of whom are parties to *Watkins*—urge this Panel to exclude *Watkins* from any MDL formed on the basis that it is procedurally advanced.

*Watkins* is not, in fact, so procedurally advanced as to preclude its inclusion. The District Judge presently assigned to *Watkins* has not ruled on any contested substantive motions, including without limit, a motion to remand and motions to dismiss the action and claims therein. Like all of the constituent actions, *Watkins* benefitted substantially from incorporation and use of discovery taken of the Manufacturer Defendants in a prior state court action, but the additional discovery necessary to try the *Watkins* case is not complete. Plaintiff recently sought, and received, two extensions of the pretrial schedule, as well as a trial continuance. As a result, the *Watkins* trial has been continued to January 6, 2025. The Panel regularly centralizes cases that are more procedurally advanced than *Watkins*. *See*, *e.g.*, *In re: Bard IVC Filters Prod. Liab. Litig.*, 122 F. Supp. 3d 1375, 1376 (J.P.M.L. 2015) (centralizing cases where "[s]everal of the pending cases have completed discovery and some are near trial."). If the Panel determines that centralization of the baby food product liability cases is appropriate, *Watkins* belongs in that proceeding.

## II. PROCEDURAL HISTORY OF *WATKINS*

On February 1, 2022, Alex Watkins, acting *pro se*, filed the *Watkins* action on behalf of his wife and three minor sons against six defendants, including Nurture, in the Civil District Court for

---

[2] Though Plaintiff submitted no response opposing an MDL or the inclusion of *Watkins*, the two firms representing Plaintiff filed interested party responses on behalf of two *different* plaintiffs in *support* of the MDL (and arguing for exclusion of *Watkins*).

2

the Parish of Orleans.[3] Dkt. 1-2.[4] Defendants removed the action to the Eastern District of Louisiana, where it was assigned to District Judge Jay C. Zainey. Dkt. 1, 2. After ruling on early pleading challenges, on June 8, 2023, Judge Zainey transferred the action to District Judge Darrel J. Papillion, who was newly appointed at that time. Dkts. 51 and 107.

With Mr. Watkins at the helm, the parties completed initial disclosures and an inventory of retained baby food products, but not a single deposition took place for more than a year. Declaration of Brooke Kim ("Kim Decl."), at ¶ 7.

Beginning on February 3, 2023, attorneys who represent other plaintiffs in baby food litigation entered appearances in the *Watkins* case, replacing Mr. Watkins as counsel. Dkts. 75, 78, 79, 84, 89. Plaintiff's counsel now consists of two primary firms, Walsh Law and Wagstaff Law Firm, who represent plaintiffs in other constituent actions, and their local counsel. Kim Decl. ¶ 8; *see also* J.P.M.L. Dkts. 14, 15. The Wisner Baum Firm, who brought this Motion to Transfer, had represented the Watkins family until moving to withdraw two days prior to filing this Motion; Movants brought this Motion the day after the motion was granted. Dkts. 320, 321.

Although *Watkins* has been pending for two years, the case is at a relatively early stage. Excepting requests for continuances, Judge Papillion has not yet ruled on any contested substantive motions. Kim Decl., ¶ 9. On June 30, 2023, more than a year after removal, Plaintiff filed a motion challenging the Court's subject matter jurisdiction. Dkt. 112. On September 15, 2023, Plaintiff

---

[3] The six defendants were Plum PBC ("Plum"), Nurture, LLC (originally named as "Nurture, Inc."), Hain Celestial Group ("Hain"), Amazon.com Sales, Inc. ("Amazon"), Whole Foods Market, Inc. ("Whole Foods"), and the Sewerage and Water Board of New Orleans. Plaintiff later dismissed Plum and the Sewerage and Water Board. Defendants Amazon and Whole Foods have been sued in this action and in no other constituent action. (MDL 3101, Dkt. 1-2.)

[4] Unless otherwise specified, references to specific docket numbers in this response refer to docket entries for *Watkins*.

filed an amended complaint.[5] Dkt. 197. The complaint included a claim for punitive damages, which Nurture and Hain moved to dismiss. Dkt. 210. Amazon and Whole Foods moved to dismiss the entire amended complaint as to them. Dkt. 220. All of these motions remain under submission. Kim Decl. ¶ 9.

With respect to discovery, the parties agreed that document discovery and depositions completed in California state court litigation could be used in the *Watkins* case. Kim Decl. ¶ 10. Plaintiff noticed or cross-noticed an additional 14 depositions, nearly half of which (six) have not been completed. *Id.* at ¶ 11.

Because of the status of discovery, Plaintiff sought and received a continuance of pretrial deadlines and the trial date. On December 22, 2023, Plaintiff proposed to Nurture a continuance of all pretrial dates, citing "outstanding discovery" as one of the reasons for the proposed extension. Kim Decl. ¶ 12. On January 8, 2024, Plaintiff petitioned for a motion to modify the schedule, which was granted on January 16, 2024. Dkts. 325 and 334. On February 1, 2024, the Court set trial for January 6, 2025. Dkt. 347. In light of the trial date, Plaintiff sought further relief from the pretrial schedule, and after meeting and conferring with Defendants, filed an unopposed motion to modify the pretrial schedule. Dkt. 351. Plaintiff's expert reports are due on May 1, 2024; fact discovery closes on May 15, 2024; and dispositive motions are due on August 28, 2024. Dkt. 352.

---

[5] The allegations in the *Watkins* Amended Petition (complaint) and the constituent actions are nearly identical. *Compare* Dkt. 197, ¶¶ 1-60 *and*, *e.g.*, MDL 3101, Dkt. 1-12, at 8-16. Because Louisiana does not recognize negligent product liability claims against manufacturers, the *Watkins* complaint omits those claims, but adds a claim for breach of express warranty and two claims against the retailer defendants, Amazon and Whole Foods. Dkt. 197.

### III. LEGAL STANDARD

A case should be centralized into an MDL proceeding if it involves common questions of fact with other actions to be transferred, and if the transfer will serve "the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation." *In re: Uber Technologies, Inc., Passenger Sexual Assault Litigation*, MDL No. 3084, U.S. Dist. LEXIS 178595, at *5-6 (J.P.M.L. Feb. 5, 2024); *accord In re Protection Devices & Equipment & Cent. Station Protection Service Antitrust Cases*, 295 F. Supp. 39, 40 (J.P.M.L. 1968).

Cases at an advanced stage relative to other actions to be transferred should be included in an MDL when they involve common factual questions and inclusion will "be of benefit to both the action and to the litigation as a whole." *In re: Hyundai and Kia Fuel Economy Litig.*, 923 F. Supp. 2d 1364, 1365 (J.P.M.L. 2013). Even when discovery has been completed in a constituent action or when a constituent action is near trial, centralization may still promote efficiencies where discovery disputes overlap. *In re: Bard IVC Filters Prod. Liab. Litig.*, 122 F. Supp. 3d at 1376.

### IV. ARGUMENT

Centralization is not appropriate in these cases, given that the number of cases is relatively limited, informal coordination has worked successfully for the cases that have been pending for many months, and little efficiency is gained where nearly all discovery against the defendants—that is, the discovery most likely to be common in all the actions—is done. Nurture agrees with the positions taken by the Manufacturer Defendants in a concurrently filed response and adopts the reasoning articulated in that response. For the sake of brevity, Nurture does not repeat those arguments here.

If the Panel is nonetheless inclined to centralize these cases, *Watkins* should be included. To the extent any of the constituent actions are suitable for coordination, *Watkins* is no differently

situated. It is not, as Movants suggest, too advanced to include in an MDL, nor does the Panel routinely exclude cases solely because they are procedurally advanced.

      A.      **If the Constituent Actions Satisfy the Standard for Coordination, *Watkins* Also Satisfies That Standard.**

If this Court determines that a centralized proceeding is warranted, which Nurture opposes, then the *Watkins* case should also be centralized with the other cases.

To the extent that any of the constituent actions involve a common core of facts, so too does the *Watkins* action. The *Watkins* case is brought by the same attorneys who represent plaintiffs in other constituent actions. And like those other actions, *Watkins* involves allegations that three trace elements found in all food grown in soil are present in baby food, and that Defendants impermissibly sold baby food with these trace elements, resulting in Plaintiff's injuries.[6] *Compare* Dkt. 197, at ¶¶ 1-2 *and*, *e.g.*, MDL 3101, Dkt. 1-12, at ¶¶ 1-2. *Watkins* and the constituent actions also involve overlapping defendants. The two primary defendants in the action, Nurture and Hain, are also defendants in a majority of the constituent actions.[7]  MDL 3101, Dkt. 1-12 through 1-22.

The Manufacturing Defendants correctly argue that the remaining discovery in the constituent actions involves little overlap because Plaintiffs have completed most discovery against Defendants and the remaining plaintiff-specific discovery is individual to each case. That

---

[6] The claims against the retailer defendants, Amazon and Whole Foods, are not so dissimilar from the claims against the Manufacturer Defendants. The *Watkins* Plaintiff alleges that Whole Foods and Amazon failed to inspect, monitor, and test baby food, and ultimately sold baby food to consumers which contained trace amounts of heavy metals, contributing to his development of a neurodevelopmental disorder. Dkt. 197, at ¶¶ 1-2, 119-129.

[7] Based on the focus of discovery alone, the *Watkins* action has been primarily directed at Nurture, such that Nurture among the other defendants stands to gain the most through centralization. Of the 14 depositions Plaintiff noticed, six are of Nurture-affiliated witnesses. Kim Decl. ¶ 11. Plaintiff has noticed only a single deposition for each of the remaining defendants, Amazon, Hain, and Whole Foods. *Id.* The remaining five depositions are of third-party witnesses. *Id.*

said, if the Panel finds that any efficiencies are created by centralization because the constituent actions involve overlapping allegations and parties, that logic applies equally to *Watkins*. It is inefficient for Nurture to face competing pretrial and motion obligations if multiple courts were to hear discovery, expert, or dispositive motions on the same issues.

The same is true of the courts: To the extent that this Panel determines that common issues exist that warrant the formation of an MDL, two federal courts should not address those issues separately. MDL courts invest significant resources in the coordination of litigation and carrying out of comprehensive assessments of complex technical or scientific issues. To require a separate federal court in Louisiana to do the same work is inefficient and could result in inconsistent rulings.

The Panel's goals in centralizing cases in an MDL are to promote efficiency and convenience; however, any efficiencies or convenience created by an MDL would be immediately frustrated by excluding *Watkins*.

**B.     *Watkins* Is At A Relatively Early Stage of Litigation.**

Movants' suggestion that *Watkins* should be excluded from any future MDL because it is procedurally advanced ignores reality. Movants represent that the *Watkins* parties are "in the midst of wrapping up fact discovery and expert disclosures are slated to occur in late January and February, 2024." (Mot. at 20.) But that is inaccurate. Prior to the filing of the Motion to Transfer, Plaintiff sought an agreement on extending the pretrial schedule. (Kim Decl., ¶ 12.) Since bringing the Motion to Transfer, Plaintiff obtained two continuances of the pretrial deadlines and a modification of the trial date. Dkts. 325, 334, 347, 351, 352. *Watkins* will not be tried before January 2025 and the parties will not complete fact discovery or exchange expert reports until May 2024. Dkt. 352. While the magistrate judge assigned to the matter has ruled on several discovery disputes, Judge Papillion has not ruled on any contested substantive motions. Kim Decl., ¶ 9.

Plaintiff's description of *Watkins* fact discovery as "wrapping up" and trial date as "imminent" is simply false.

### C. Interested Parties' Arguments Are Similarly Unavailing.

Other plaintiffs filing interested party responses—none of whom are involved in the *Watkins* case—make similar arguments. Plaintiffs VZ and AT argue that that *Watkins* has a "fast approaching" expert deadline and an "anticipated 2024 trial date;" involves claims against retailers not at issue in other cases; and is subject to a pending motion to remand. MDL 3101, Dkts. 51, 64.[8] None of these arguments is reason to exclude *Watkins*. First, as described above, Plaintiff sought and received a new pretrial schedule, and consequently, a new trial date in January 2025. Dkts. 325, 351, 352. Expert deadlines are still approximately three months away. Dkt. 352.

Second, the presence of claims and defendants not at issue in other constituent actions is not reason to exclude a case. *See In re Bank of N.Y. Mellon Corp. Foreign Exch. Transactions Litig.*, 857 F. Supp. 2d 1371, 1372-73 (J.P.M.L. 2012) (holding that "[w]here common factual issues exist . . . the presence of different legal theories among the subject actions is not a bar to centralization" and "[c]entralization also does not require a complete identity of parties.") (internal citation and quotation marks omitted); *Katz Interactive Call Processing Patent Litig.*, 481 F. Supp. 2d 1353, 1355 (J.P.M.L. 2007) ("Transfer under Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer.")

Third, longstanding authority of the Panel establishes that remand motions can be decided by the transferee judge, and therefore do not preclude transfer of cases to centralized federal proceedings. In *In re Phenylpropanolamine (PPA) Products Liability Litigation*, the Panel

---

[8] Plaintiffs Clark, BP, and CG argue for exclusion of *Watkins*, without explanation. MDL 3101, Dkt. 61.

specifically acknowledged that "the MDL Panel has jurisdiction to transfer a case in which a jurisdictional objection is pending… ." No. CV01J2303NW, 2002 WL 31108228, at *1 (J.P.M.L. Mar. 4, 2002) (citing *In re Ivy*, 901 F.2d 7, 9 (2nd Cir. 1990)); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) ("[T]here is no need to delay transfer in order to accommodate any interest of the transferor court in resolving a pending remand motion.").

For these reasons, attempts to distinguish *Watkins* are without merit and should be rejected. If the Panel orders an MDL, no reasonable basis exists for allowing *Watkins* to proceed separately.

### D.    Even Procedurally Advanced Cases Should Be Coordinated If Doing So Is In the Interest of Efficiency.

The Panel regularly orders centralization of cases more advanced than *Watkins*. In *In re: Hyundai and Kia Fuel Economy Litigation*, the Panel ordered an action known as *Espinosa*, which had been pending for a year, to be centralized. 923 F. Supp. 3d at 1364-65. Plaintiffs in six actions, including the *Espinosa* action, opposed including *Espinosa* in the MDL because it was factually distinct from every other case. *Id.* at 1364-65. Over plaintiffs' objections, the Panel centralized *Espinosa*, finding that coordination would benefit "both the action" and the "litigation as a whole" because *Espinosa* had significant factual overlap with other cases to be centralized. *Id*. at 1365.

Indeed, the Panel has centralized cases that are unquestionably more advanced than *Watkins.* For example, in *In re: Mirena IUD Products Liability Litigation*, the Panel centralized two procedurally advanced cases in which fact discovery was "nearly complete." 938 F. Supp. 2d 1355, 1357 n.2 (J.P.M.L. 2013). The Panel noted that "the transferee judge is in the best position to incorporate those actions in a manner that accommodates the progress already made while also addressing the issues raised in the more recently filed actions," and further emphasized that "the

degree of consolidation or coordination is a matter soundly dedicated to the discretion of the transferee judge." *Id.* at 1357.

While the *Watkins* case has been pending for two years, fact discovery is still not complete, and no expert discovery has taken place. Given that at least some of the discovery sought in the constituent actions overlaps with discovery in *Watkins*, centralization of *Watkins* is appropriate. If centralized, the transferee judge may determine how to coordinate *Watkins* with more recently filed actions. *See id.* at 1357.

        **E.**        **The Southern District of New York Is the Appropriate Forum.**

As explained in the Manufacturer Defendants' Response to the Motion to Transfer, any coordinated proceeding should be transferred to the Southern District of New York. Nurture—which is located within the Southern District of New York, along with many of its documents and witnesses—fully adopts and incorporates by reference the argument as to venue in the Manufacturer Defendants' Response.

**V.**        **CONCLUSION**

Centralization is not appropriate in these actions given the lack of efficiencies created by coordination. Should the Panel disagree, Nurture respectfully requests that the constituent actions, including *Watkins*, be transferred to the Southern District of New York.

Dated: February 13, 2024

By: /s/ *Loren H. Brown*
Loren Brown
**DLA PIPER LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, NY 10020-1104
Tel:  212.335.4500
Fax:  212.335.4501
Email: loren.brown@us.dlapiper.com

*Counsel for Nurture, LLC*